UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE S. DUKULY,

       Plaintiff,

v.

UNKNOWN NUTTALL, *et al.*,

       Defendants.

_____/

Case No. 1:21-cv-519

Hon. Janet T. Neff

**REPORT AND RECOMMENDATION**

Plaintiff Willie S. Dukuly ("Dukuly") is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). Dukuly filed this prisoner civil rights lawsuit pursuant to 42 U.S.C. § 1983. The alleged incidents occurred at the MDOC's Earnest C. Brooks Correctional Facility (LRF). The only remaining defendant is Corrections Officer (CO) Kyle Nuttall (sometimes referred to as "Nutall"). Dukuly alleged that CO Nuttall violated his Eighth Amendment rights and state law. This matter is now before the Court on CO Nuttall's motion for summary judgment (ECF No. 58).

      **I.**    **Dukuly's allegations**

The Court summarized the relevant allegations of Dukuly's amended complaint (ECF Nos. 5-1 and 8) as follows:

> Plaintiff alleges that on February 21, 2020, he told Defendant Nuttall that inmate Maniaci owed him money, and Nuttall responded, "Go do what you gotta do!" (ECF No. 5-1, PageID.43.) Defendant Nuttall opened the door to inmate Maniaci's cell, "implicitly authorizing Plaintiff to enter his cell to retrieve the store bag that was owed to him." (*Id.*) Subsequently, inmate Maniaci filed a grievance regarding the missing store bag, which led to an investigation. (*Id.*)

1

On March 2, 2020, inmate Maniaci was called to the control desk "where the Defendants were collectively stationed and showed [him] the video surveillance of Plaintiff entering his cell to receive his store bag." (*Id*.) Defendant Nuttall told inmate Maniaci, "You weren't paying enough for protection and you know what you have to do now," which [inmate] Maniaci inferred that Plaintiff '[n]eeded to be taken care of.'" (*Id*., PageID.43-44.) Plaintiff avers that the "propensity for violence . . . is so substantial and pervasive at LRF that the Defendants were personally aware that . . . revealing the video surveillance . . . would result in Plaintiff being subjected to the substantial risk of violence at the hands of other prisoners." (*Id*., PageID.44.)

Plaintiff avers that inmate Maniaci communicated this information to inmate Eldridge, who "in return offered him an unknown sum of money to viciously attack Plaintiff with a pad lock fashioned into a weapon with the intention of inflicting great bodily injury." (*Id*.) On March 5, 2020, Plaintiff was sitting at a table playing a game of chess when inmate Eldridge hit him in the head with a pad lock several times. (*Id*.) Plaintiff avers that he sustained significant lacerations to his head and left ear, "accompanied by 'crushing' pain and headaches," and that he had to be transported to the Mercy Health Hackley Campus emergency room for medical treatment. (*Id*.)

Plaintiff seeks declaratory relief as well as damages.

Opinion (ECF No. 6, PageID.49-50).

On initial screening, the Court addressed the legal standard applicable to Dukuly's Eighth Amendment claim against CO Nuttall and the allegations relevant to that claim:

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

2

>   Here, Plaintiff alleges that Defendant Nuttall opened inmate Maniaci's cell so that Plaintiff could retrieve the store bag owed to him. (ECF No. 5-1, PageID.43.) Inmate Maniaci filed a grievance about the missing bag, and Defendant Nuttall showed him the video surveillance of Plaintiff going into the cell to retrieve the bag. (*Id*.) Defendant Nuttall told inmate Maniaci, "You weren't paying enough for protection and you know what you have to do now," and inmate Maniaci purportedly inferred that Plaintiff "[n]eeded to be taken care of." (*Id*., PageID.44.) Inmate Maniaci subsequently recruited inmate Eldridge to attack Plaintiff with a pad lock. (*Id*.) Given these allegations, the Court concludes that Plaintiff has set forth a plausible Eighth Amendment failure to protect claim against Defendant Nuttall.

Opinion at PageID.53-54.

The Court further stated that,

>   Plaintiff seeks to raise state law claims of assault, battery, gross negligence, and intentional infliction of emotional distress. (ECF No. 5-1, PageID.45-47.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for violations of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law, therefore, fails to state a claim under § 1983.
>
>   Plaintiff, however, seeks to invoke this Court's supplemental jurisdiction over his state law claims. Because Plaintiff's Eighth Amendment claim against Defendant Nuttall remains pending, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against him.

*Id*. at PageID.54.

## II.    CO Nuttall's motion for summary judgment

### A.    Legal standard

CO Nuttall has moved for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

>   (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

> stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.  Dukuly's Eighth Amendment claim

#### 1.  Legal standard

"To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). To meet the objective element, the inmate must show that the failure to protect from risk of harm is objectively sufficiently serious, *i.e.*, that he is incarcerated under conditions posing a substantial risk of serious harm. *Id*. The subjective element focuses on whether prison officials "had a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. This requires that prison officials know that inmates face a substantial risk of

harm and "disregard[ ] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. However, "Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (internal quotation marks omitted). In addition, "a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." *Bishop*, 636 F.3d at 767.

### 2.    Discussion

The gist of Dukuly's claim is that CO Nuttall's conduct amount to deliberate indifference because (1) CO Nuttall showed prisoner Maniaci a surveillance video of Dukuly taking property from Maniaci's cell, and (2) that CO Nuttall encouraged Maniaci to attack Dukuly by telling Maniaci that " 'You weren't paying enough for protection and you know what you have to do now,' which [inmate] Maniaci inferred that Plaintiff '[n]eeded to be taken care of.'" As discussed below, Dukuly has failed to present evidence to support these allegations. In this regard, Dukuly has no personal knowledge of these incidents. Rather, Dukuly attempts to avoid summary judgment by presenting hearsay from other prisoners.

Dukuly does not deny that he entered Maniaci's cell. At his deposition, Dukuly testified that while CO Nuttall was doing rounds,

> I asked him that a prisoner named -- by the name of Maniaci -- Vito, owed me money -- owed me money for store goods and then he basically like -- you know, just basicallyv[sic], "Go do what you got to do." And it really wasn't up to him.

Dukuly Dep. (ECF No. 59-2, PageID.316). Dukuly testified that CO Nuttall opened Maniaci's cell door. *Id*. at PageID.317. Dukuly later qualified his testimony, stating that "So when I came back from chow, he opened with -- he opened Maniaci's door." *Id*. at PageID.318.

CO Nuttall's counsel inquired as to what occurred after Maniaci's door was opened:

5

> Q    That's when you went in there and took his store bag?
>
> A    Yeah; that's when I went in there and took his store bag, yeah.

*Id*. at PageID.319.  Dukuly testified that Maniaci owed him money "for running the store. . . I was storing him my coffees [sic]."  *Id*. at PageID.320.  According to Dukuly, "I just took what I was owed."  *Id*. at PageID.321.  Dukuly did not tell Maniaci that "he had taken his store stuff" to get what he was owed.  *Id*.  At some point Dukuly learned that Maniaci had filed a grievance regarding the missing store bag.  *Id*. at PageID.323.

On February 23, 2020, Maniaci filed a grievance against CO Nuttall and another CO for confiscating personal property from his cell.  *See* Grievance (number illegible) (ECF No. 59-3, PageID.330-331).  The property was allegedly taken on February 21, 2020.  *Id*.  CO Nuttall stated that he showed prisoner Maniaci the surveillance video as part of grievance investigation.  In his declaration, CO Nuttall stated:

> 4.    On March 4, 2020, I was informed by my supervisor that a grievance had been filed by prisoner Casper Maniaci, which claimed that property belonging to Maniaci had been confiscated from his cell by myself and another unit officer.
>
> 5.    That same day I investigated the issue by reviewing unit surveillance video from the date and time that the property was alleged to have been taken.  Video showed another prisoner going into Maniaci's cell and leaving with a bag around the approximate time Maniaci claimed his property was taken.
>
> 6.    To resolve Maniaci's grievance, I showed him a short portion of the surveillance video. The video was played on a computer monitor on the desk in the unit base, with Maniaci standing behind the base wall approximately 10 feet away. I did not believe that Maniaci would be able to identify the specific prisoner in the video, only that it was not a corrections officer who took the property from his cell.
>
> 7.    I did not discuss any specific prisoner(s) with Maniaci, nor did I discuss any actions that Maniaci should take. Specifically, I did not make the statement, "You weren't paying enough for protection and you know what you have to do now." My only intent was to show Maniaci that it was not a corrections officer who took the bag from his cell.

> 8. I did not have any belief that showing the short portion of the surveillance video to Maniaci would place any prisoners at risk of being harmed.

Nuttall Decl. (ECF No. 59-4, PageID.333).

CO Brian Tenhove was present when CO Nuttall showed prisoner Maniaci the surveillance video related to the grievance. Tenhove Decl. (ECF No. 59-5, PageID.336-337). Tenhove stated that, "[t]he video showed that another prisoner had entered Maniaci's cell and left with a bag." *Id*. at PageID.337. Tenhove continued:

> 5. The video was played on a computer monitor at the desk in the unit base. Prisoner Maniaci was standing behind the base wall, which is several feet away from the monitor.
>
> 6. I was within the vicinity of Officer Nuttall and prisoner Maniaci, at a distance close enough to where I could hear what was said. At no time did I hear Officer Nuttall inform prisoner Maniaci who the prisoner that entered his cell was. Specifically, there was no discussion about prisoner Willy Dukuly. In addition, Officer Nuttall did not make the statement, "You weren't paying enough for protection and you know what you have to do now."

*Id*.

CO Kyle Treptow was also present when CO Nuttall showed prisoner Maniaci the surveillance video. Treptow Decl. (ECF No. 60-1, PageID.342-343). Treptow stated that:

> The video showed that another prisoner entered Maniaci's cell and left with a bag. The video was played on a small computer monitor at the desk in the unit base with Maniaci standing several feet away behind the base wall. I would not believe that Maniaci would have been able to identify the prisoner in the video from where he was standing.

*Id*. at PageID.343. Treptow further stated:

> I was at the base during this entire encounter. At no time did CO Nuttall inform prisoner Maniaci who the prisoner in the video was. Specifically, there was no discussion about prisoner Willy Dukuly. In addition, Officer Nuttall did not make the statement, "You weren't paying enough for protection and you know what you have to do now."

*Id*.

The parties submitted a "Stipulated Exhibit" identified as "Joint Exhibit A: Two March 4, 2020, surveillance videos from the Eastlake unit of Earnest C. Brooks Correctional Facility" (ECF No. 72). *See* Order granting stipulation (ECF No 73). The Court reviewed the Joint Exhibit A which purportedly shows CO Nuttall playing the surveillance video to prisoner Maniaci on March 4, 2020. During a short portion of the video (approx. from 5:18 to 6:23) a prisoner enters "E Unit Base", the prisoner appears to be looking at a computer monitor from behind a desk/short wall several feet away, and the prisoner may have exchanged a few words with one of the COs present. There is no audio. Joint Exhibit A corroborates the COs' declarations that the prisoner was standing several feet away from the computer monitor.

The eyewitness' declarations and the video establish: that CO Nuttall allowed Maniaci to view the video on a computer monitor about ten feet away; that CO Nuttall did not identify Dukuly as the prisoner who entered Maniaci's cell; that CO Nuttall did not discuss "protection payments" made by Maniaci; and, that CO Nuttall did not encourage Maniaci to attack Dukuly.

Dukuly presents no evidence to rebut the declarations. Dukuly was not present when CO Nuttall showed Maniaci the surveillance video and allegedly encouraged Maniaci to attack Dukuly. Rather, Dukuly's claim relies on hearsay evidence from nonparties Maniaci (who was present) and Eldridge (who was not present). At Dukuly's deposition, defendant's counsel inquired about how Dukuly obtained the quote of CO Nuttall's conversation, in which Nuttall allegedly told prisoner Maniaci that "You weren't paying enough for protection and you know what you have to do now." *Id*. at PageID.324 (referring to ¶ 15 of Dukuly's Amended complaint).[1]

---

[1] Paragraph 15 of the amended complaint states:

When counsel asked, "Who told you this quote and these words right here" (referring to ¶ 15), Dukuly provided a confusing and fragmented response which ultimately identified non-parties Eldridge and Maniaci:

> A    Well, Eldridge and Maniaci -- Eldridge and Maniaci -- Eldridge, the person who hit me with the lock, Maniaci and that's how it happened. Because I think Eldridge, if I'm not mistaken -- I think Eldridge was, I think -- I don't know -- if I'm not mistaken -- I don't want to -- to my knowledge -- to the best of my knowledge, he had a -- I guess he wasn't getting along with the CO's and whatever, something was going on where he had a CSC case and I guess they had it out for him or something like that and then, you know, that's how everything like that -- so basically they -- they revealed that to me.

*Id.* at PageID.325.

Assuming that Maniaci or Eldridge "revealed" information to Dukuly about Maniaci's March 4, 2020 interaction with CO Nuttall, such revelations would be hearsay evidence which is not considered by the Court on summary judgment. *See Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) ("Hearsay evidence may not be considered on summary judgment.").[2]

Based on this record, Dukuly cannot demonstrate the components of a deliberate indifference claim, *i.e.*, (1) that CO Nuttall placed Dukuly under conditions posing a substantial risk of serious harm; and, (2) that CO Nuttall subjectively ignored the risk to Dukuly's safety. *See Bishop*, 636 F.3d 757 at 766. As discussed, CO Nuttall took steps to prevent Maniaci from identifying the prisoner in the video. In addition, there is no evidence that CO Nuttall identified

---

In the process of viewing the video surveillance Defendant Nuttall stated to Mr. Maniaci, "You weren't paying enough for protection and you know what you have to do now," which Mr. Maniaci inferred that Plaintiff "[n]eeded to be taken care of."

Amend. Compl. at PageID.60-61.

[2] *See* Fed. R. Evid. 801(c) (" 'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").

9

Dukuly as the prisoner who took Maniaci's property or that Nuttall encouraged Maniaci to attack Dukuly.

Even if the Court assumes that CO Nuttall knew that Dukuly was the prisoner in the video, the evidence demonstrates that Nutall did not have a sufficiently culpable state of mind to establish deliberate indifference. Nuttall showed the video to Maniaci in a manner intended to prevent Maniaci from identifying the prisoner's identity. Even if CO Nuttall miscalculated and Maniaci was able to identify Dukuly on the computer screen from about 10 feet away, this situation does not rise to the level of a constitutional violation. "Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835.

For all of these reasons, CO Nuttall's motion for summary judgment should be granted.

### III. State law claims

#### A. The Court should decline to address the supplemental state law claims

CO Nuttall also moves to dismiss Dukuly's supplemental state law claims of assault, battery, gross negligence, and intentional infliction of emotional distress pursuant to 28 U.S.C. § 1367. If the Court accepts the recommendations to dismiss Dukuly's federal claims against CO Nuttall, then his state law claims should be dismissed. The Court exercised its supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367, presumably because the claims were intimately related to the alleged federal violations. *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy"). Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has

original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claims, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir.1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). As discussed, the undersigned has concluded that all of Dukuly's federal claims against CO Nuttall should be dismissed. If the Court agrees with this conclusion, then there is no reason to retain supplemental jurisdiction over Dukuly's state law claims and the Court should dismiss these state law claims pursuant to 28 U.S.C. § 1367(c)(3).

**B.    CO Nuttall's motion to dismiss the state law claims**

In the alternative, CO Nuttall's brief appears to ask the Court to dismiss Dukuly's state law claims.   Nuttall's brief is in support of a motion for summary judgment pursuant to Fed. R. Civ. P. 56, not a motion to dismiss Dukuly's claims brought pursuant to Fed. R. Civ. P. 12(b)(6). In addition, Nuttall's brief presents a mixed bag of legal theories with respect to the state law claims which does not set forth a discrete legal standard to address either a motion to dismiss or a motion for summary judgment. The Court previously screened the amended complaint and concluded that, "Because Plaintiff's Eighth Amendment claim against Defendant Nuttall remains pending, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against him." Opinion at PageID.54.  *See* Case Management Order ("CMO") (ECF No. 24, PageID.127) (finding that Dukuly stated claims for relief and discouraging the filing of motions to dismiss).[3]

---

[3] In this regard, the CMO (ECF No. 24, PageID.127) provides as follows:

> (a) <u>Rule 12(b)(6) Motions</u>.  The Court has conducted an initial review of the complaint pursuant to 28 U.S.C. §1915(e), §1915A and 42 U.S.C. § 1997e(c), to determine whether it is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant that is immune from such relief. Upon initial review, the Court concludes that the complaint is not subject to dismissal for any of the reasons listed above. In reaching this conclusion,

Here, CO Nuttall's brief presents cursory arguments to dismiss Dukuly's state law claims, apparently for failure to state claims for relief. The Court already screened the sufficiency of Dukuly's claims under the standard applicable to Fed. R. Civ. P. 12(b)(6), discovery is closed, and this matter is before the Court on a motion for summary judgment with an extensive factual record. At this stage of the litigation, CO Nuttall's motion with respect to the state law claims should be presented as one for summary judgment, not as a motion to dismiss implicitly brought pursuant to Fed. R. Civ. P. 12(b)(6). For all of these reasons, CO Nuttall's arguments to dismiss the state law claims (PageID.305-308) are not properly before the Court and should be denied.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendant CO Nuttall's motion for summary judgment (ECF No. 58) be **GRANTED** as to plaintiff Dukuly's federal constitutional claim and **DENIED** as to plaintiff's state law claims.

I further recommend that that plaintiff Dukuly's state law claims be **DISMISSED** pursuant to 28 U.S.C. § 1367 and that this case be **terminated**.

Dated: January 26, 2024

/s/ Ray Kent
Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

the court has determined that the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). Accordingly, the Court discourages the filing of motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).